**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bernice A. AUSTIN,
Defendant–Appellant,**

**Southtrust Bank of Baldwin
County, Defendant.**

**No. 87–7009
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 4, 1988.

Rehearing and Rehearing En Banc Denied
Nov. 10, 1988.

---

Joseph M. Bolton, Jr., Legal Services Corp. of Alabama, Bay Minette, Ala., Elizabeth Cvetetic, Mary Jane Oakley, Legal Services Corp. of Alabama, Monroeville, Ala., for defendant-appellant.

E.T. Rolison, Jr., Asst. U.S. Atty., Mobile, Ala., Aaron B. Kahn, Office of the Gen. Counsel, U.S. Dept. of Agriculture, Washington, D.C., for plaintiff-appellee.

Before HILL, HATCHETT and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant, Ms. Bernice A. Austin, borrowed $29,500 on February 20, 1981 from the Farmers Home Administration ("FmHA") pursuant to 42 U.S.C. § 1472. This loan was secured by a mortgage on property she owned. The note called for interest at the rate of 12% per annum and a repayment term of 393 months which, according to the record, would have resulted in a monthly payment of $303.00; however, on May 20, 1981, she was granted an interest credit based upon her income, which

reduced her monthly payment to $134.00 beginning with the payment due on June 20, 1981. Ms. Austin subsequently made only infrequent payments, and the FmHA sent delinquency notices to her. In March, 1982, Ms. Austin met with the FmHA County Supervisor and informed him that she had been laid off from her employment since September, 1981. The FmHA determined that she was entitled at that time to additional interest credit assistance, reducing her monthly payments to $102.00, but that she was not entitled to a payment moratorium because the sum of her payments on the note, insurance premium and taxes did not exceed 35% of her projected income.

In the fall of 1982, the FmHA granted Ms. Austin a six-month payment moratorium, as the result of her having notified the agency that she was no longer receiving unemployment compensation benefits. Ms. Austin requested an extension of that moratorium in February, 1983; the FmHA concluded that she did not qualify for an extension of the moratorium, but that she did qualify for the maximum interest credit, which reduced her monthly payments to $89.00. The FmHA also informed her at this time that its evaluation of her projected financial situation indicated that she could repay the indebtedness deferred by the moratorium, at a rate of $30.00 per month. Accordingly, Ms. Austin executed an "Additional Partial Payment Agreement," in which she agreed to make monthly payments of $119.00 beginning on April 20, 1983.

On June 30, 1983, following Ms. Austin's continued failure to make the scheduled payments, the FmHA County Supervisor sent her a letter specifying an arrearage of $357.00 and indicated that the FmHA would have to foreclose on her home if she did not bring her account current by July 20, 1983. Ms. Austin did not meet the July 20 deadline, and on August 11, 1983, the County Supervisor recommended to the FmHA District Director and State Director that Ms. Austin's indebtedness be accelerated and the loan foreclosed. This recommendation was reviewed and adopted on August 19, 1983 by the District Director,

and on August 29, 1983 by the State Director. Ms. Austin made her last payment to the FmHA on August 15, 1983, in the amount of $238.00.

The State Director notified Ms. Austin of the acceleration by letter on August 29, 1983, informing her that foreclosure would take place unless she repaid her indebtedness in full by October 3, 1983. The letter also informed her of available appeal procedures within the FmHA, and notified her of her right to counsel. Ms. Austin retained counsel and initiated an appeal by letter dated September 28, 1983. Her request for a hearing was granted, though her request that it be held in or near her home in Bay Minette, Alabama was not granted; the hearing was scheduled by the District Director for November 29, 1983 in Andalusia, Alabama, where he normally holds such hearings. Ms. Austin elected not to attend the hearing due to the distance from her home, but submitted a letter brief. This brief was accompanied by affidavits of her mother and herself which asserted that she had not been receiving the amount of child support indicated in the FmHA budget projections.

The FmHA District Director concluded that the FmHA had properly serviced the loan, that the decision to accelerate the loan would stand, and that the proposed foreclosure would proceed. He reported this decision to Ms. Austin in a letter dated December 6, 1983, which also set forth procedures for further administrative appeal. Ms. Austin appealed this decision to the FmHA in Washington, D.C.; the FmHA Assistant Deputy Administrator also denied relief.

The United States filed a complaint for foreclosure of the loan in the United States District Court for the Southern District of Alabama. Trial was held on September 8, 1986; the district court entered a final judgment and decree of foreclosure in favor of the government on December 24, 1986. This appeal ensued.

Appellant alleges a number of defects in the manner in which her case was handled by the FmHA. We glean from the brief

that Ms. Austin complains of the following alleged shortcomings in the FmHA's handling of her case: (1) the FmHA failed to make sufficiently aggressive collection efforts on her loan; (2) in calculating interest credit and moratorium eligibility, the FmHA assumed that Ms. Austin would receive more unemployment compensation than she in fact received or was entitled to; (3) the FmHA failed to verify adequately the child support included in the projected budget upon which her eligibility for interest credit and moratorium were determined, and consequently overestimated her income; (4) when the FmHA imposed an Additional Partial Payment Agreement ("APPA"), providing for repayment of the amount deferred by the moratorium, at a rate of $30.00 per month, it failed to explore adequately the possible alternatives to an APPA; (5) the FmHA failed to notify her of her right to appeal the administrative denial of her request for extension of the moratorium; (6) defective administrative appeal procedure, in that the State Director made the decision to accelerate her debt and foreclose her loan, and the administrative appeal of this decision was before the District Director, who ranks below the State Director; and (7) the State Director made the decision to accelerate and foreclose the loan without knowledge of a partial payment Ms. Austin made after the District Director's recommendation but prior to the State Director's acceptance of the recommendation. We find no basis for granting relief on any of Ms. Austin's claims.

## I. COLLECTION EFFORTS

■ Ms. Austin complains that the FmHA did not pursue her with sufficient aggressiveness when her loan became delinquent, as required by 7 C.F.R. § 1951.312 (1983). The FmHA's collection follow-up was not ideal in its thoroughness, but we are not persuaded that Ms. Austin should be able to claim a deprivation of her rights based on the FmHA's failure to more aggressively hound her and extract payments from her. This was, after all, a *loan*, not a *grant*. We agree with Ms. Austin that the FmHA regulations are de-

signed to help "give borrowers an opportunity to become successful homeowners." 7 C.F.R. § 1951.312 (1983). *See also* 7 C.F.R. § 1951.307 (1983). However, we cannot agree with Ms. Austin's implicit interpretation of these regulations, which almost ignores her obligation to repay the loan. Ms. Austin appears to suggest that the FmHA is now precluded from enforcing the consequences of her non-payment because it did not pursue her and demand each payment as it came due. We believe that this overlooks an essential feature of a loan, which is defined as "[a] borrowing of money ... by a person *who promises to return it.*" Black's Law Dictionary 844 (5th ed. 1979) (emphasis supplied). As reflected in the summary of the facts above, the FmHA at different times responded to Ms. Austin's adverse financial circumstances with interest credits and with a payment moratorium, based upon an assessment of her eligibility for such consideration. We agree with the district court that Ms. Austin was given the consideration to which she was entitled.

## II. UNEMPLOYMENT COMPENSATION PROJECTION

■ Ms. Austin complains that the FmHA, in calculating the budget upon which the decisions were made about her eligibility for interest credit and payment moratorium, projected that she would continue to receive unemployment compensation in the amount of $90.00 per week for the entire year, when in fact she was only guaranteed this compensation for a portion of the year. We need not address this question, however, because this issue was not raised in the administrative proceedings before the FmHA, and we agree with the district court that this omission precludes judicial review of the claim. *See United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *Taft v. Alabama By-Products Corp.,* 733 F.2d 1518, 1523 (11th Cir.1984). Ms. Austin argues in the statement of facts in her initial brief that the Trial Transcript at 16–18 shows that this

issue "was raised." We do not find this argument persuasive. The transcript reflects that the issue was raised at trial, during cross-examination of the FmHA County Supervisor, but that is not sufficient. The district court correctly concluded that the issue was not raised in the appellate proceedings before the FmHA.

While conceding that, in general, issues not raised before an agency prior to or during administrative review proceedings may not be subsequently raised in court, Ms. Austin argues that her circumstances are sufficiently exceptional to bring her within the exception to the general rule. *See Board of Pub. Instruction of Taylor County, Fla. v. Finch*, 414 F.2d 1068, 1072–73 (5th Cir.1969). Ms. Austin's loss of her home is certainly tragic, and such a loss clearly would be an exceptional experience for most individuals. However, Ms. Austin's experience is a quite unexceptional consequence of her failure to make the required payments. We therefore conclude that the district court correctly determined that this case does not qualify for the exception, so judicial review of this issue is not available.

## III. CHILD SUPPORT PROJECTION

■ The FmHA also projected in Ms. Austin's budget that she would receive $75.00 per week in child support, which is the amount specified in her divorce decree. She complains that this was improper, since the FmHA's records do not show that it verified the receipt of these amounts and she denies that she has received them. To support her position, she points to our opinion in *Johnson v. United States Department of Agriculture*, 734 F.2d 774 (11th

Cir.1984) which suggested that the standards of fundamental fairness preclude inclusion in budget projections of child support payments which are not likely to be received. 734 F.2d at 787. We note first that the procedural posture of the *Johnson* case was quite different from that of the instant case; *Johnson* involved an appeal from the denial of a motion for a preliminary injunction to prevent non-judicial foreclosure. *Id.* at 775. More importantly, in *Johnson* it appears to have been well-established that the projected child support amounts were not received, and there does not appear to have been any issue as to whether FmHA was aware of this fact. *See id.* at 779–80, 787. In this case, however, the district court specifically "[did] not find credible [Ms. Austin's] testimony regarding either the non-receipt of child support payments or the assertion that she informed FmHA of such non-payment prior to the appeal taken on acceleration of the ... indebtedness." R1–18–4. This conclusion is not clearly erroneous. Absent information to the contrary, it is hardly unreasonable for the FmHA to assume that a borrower is receiving support payments specified in a judicial decree.

## IV. FAILURE TO DISCUSS ALTERNATIVES TO APPA

■ Ms. Austin argues that when the FmHA had her sign the APPA requiring repayment of the amounts deferred by the moratorium at a rate of $30.00 per month, it improperly failed to consider all the options specified by FmHA regulations for servicing a loan at the expiration of a moratorium. *See* 7 C.F.R. § 1951.313(e) (1983).[1]

1. (e) *Action at the expiration of the final moratorium period.* (1) At the end of the moratorium period, the County Supervisor will verify the borrower's annual income and obtain a current financial statement to determine the borrower's ability to repay the unpaid balance of the RH indebtedness. Interest cancelation, reamortization of the account, and repayment schedules will be determined in accordance with the following provisions:
(i) Borrowers who can repay, within 2 years, any principal and interest which was deferred during the moratorium period, in addition to the regular scheduled install-

ments, will execute Form FmHA 451–37 to establish a new repayment schedule.
(ii) For borrowers who cannot meet the repayment requirements of paragraph (e)(1)(i) of this section, the unpaid principal and interest balance of the loan will be reamortized within the remaining term of the loan.
(iii) For borrowers who cannot meet the repayment requirements of paragraph (e)(i)(ii) of this section, the loan account will be reamortized for the remaining term of the loan plus a period not to exceed the time the moratorium was in effect. If the loan was

**1492**

We disagree. The regulations call for step-wise consideration of four possible arrangements, beginning with the most stringent and progressing to the most lenient. *Id.* Each of the more lenient arrangements need only be considered after a determination that the borrower cannot meet the requirements of one of the previous, more stringent, requirement. The FmHA determined that Ms. Austin could repay the moratorium amount in a two-year period, R1–16–Enc. 8, which meant that she fell under the most stringent requirement for repayment. 7 C.F.R. § 1951.313(e)(i) (1983). Therefore, there was no requirement that the FmHA consider any of the less-stringent arrangements.

### V. OTHER ISSUES

We need not consider Ms. Austin's remaining contentions, as she did not argue them at trial. *See* Fed.R.Civ.P. 46.

The judgment of the district court is AFFIRMED.

not originally scheduled for the maximum legal term, then the loan can be reamortized for the maximum legal term of the loan plus a period not to exceed the time the moratorium was in effect, less the number of years the loan has been outstanding. State supplements establishing policies and procedures will be issued for extending the term of the loan or advice will be obtained from the Office of General Counsel (OCG) on a case-by-case basis. The borrower must pay for title clearance and legal services needed to assure that the Government's lien priority is retained.

(iv) If the determination is made that the borrower cannot make scheduled payments on the balance owed under the terms of paragraph (e)(1)(iii) of this section without cancellation of part or all of the interest which accrued during the moratorium, the County Supervisor will determine how much interest must be canceled to enable the borrower to repay the loan during the time authorized in paragraph (e)(1)(iii) of this section. The County Supervisor will complete Section II of Form FmHA 451–23 indicating the amount of interest canceled. Such amount will be deducted from the balance owed in determining a new repayment schedule.

(v) The borrower will be advised by letter of the action taken, the reasons for the action, the new repayment schedule, and that, if the borrower does not agree with the action taken, the borrower may appeal the action as provided in Subpart B of Part 1900 of this chapter.
7 C.F.R. § 1951.313(e) (1983).